UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| CHRIS AND LINDA SCHMITZ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:08-CV-87 |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION ORDER**

This matter is before the Court on Defendant Allstate Insurance Company's ("Allstate") motion for partial summary judgment, [Doc. 48]. The plaintiff has replied and the matter is ripe for review. The defendant frames the issue as whether the cause of action for bad faith should be dismissed because of plaintiffs' alleged failure to comply with the formal demand and waiting-period limits of Tennessee Code Annotated section 56-7-105. For the reasons that follow, this Court concludes that there is no genuine issue of material fact whether plaintiffs complied with the formal demand requirements and the defendant's motion is **GRANTED**.

**I. FACTS**

The facts that follow are viewed in the light most favorable to the plaintiffs. The plaintiffs purchased a homeowner insurance policy from Allstate at

some point prior to January 2007. The policy covered the real property located at 248 Carpenter Road, Mooresburg, Tennessee. On January 20, 2007, the house was destroyed by fire. In addition, on June 10, 2007, while plaintiffs were staying at the Holiday Inn Express in Rogersville, Tennessee, the plaintiffs claim that the sprinkler system malfunctioned and caused damage to their personal property. They contend that the fire loss and the water loss are covered by the policy. Plaintiffs had made all appropriate payments on the policy on January 20, 2007, when the house was destroyed by fire and on June 10, 2007, when the sprinkler system malfunctioned. After the fire and water damage, the plaintiffs filed a claim under the insurance policy, and Allstate began investigating the claim.[1]

On January 10, 2008, Allstate sent the plaintiffs a letter stating that, after reviewing its investigation of the claims, it would not pay the claim. Allstate determined that the plaintiffs or someone at the plaintiffs' direction "intentionally set the fire and intentionally damaged the sprinkler head, and there have been material misrepresentations, concealment and fraud by [the plaintiffs] about both claims." On February 22, 2008, plaintiffs "sent" a letter ("demand letter") to Mr. Richard Read,

---

[1] It is unclear whether the plaintiffs filed the first claim for fire damage and then supplemented the claim or filed a subsequent claim for the water loss or whether both claims were filed after the water loss incident. This Court assumes the claims were made at different times. Nonetheless, the timing does not affect the outcome of this motion.

a Staff Claim Service Adjuster for Allstate.² The was addressed as follows:

>Mr. Richard Read
>Allstate Insurance Company
>Claims Department
>P.O. Box 12055
>1819 Electric Rd. S.W.
>Roanoke, VA 24018.

This Post Office Box address is listed on Allstate's website under "Contact Us." It states that "General correspondence" can be sent to this address. The February 22, 2008 letter stated, "Further we respectfully would ask that you consider this letter a demand for payment under a valid insurance policy pursuant to Tennessee Code Annotated § 56-7-105 and all other relevant provisions under Tennessee law."

Mr. Read's affidavit, which was submitted by the defendant, states that the address on the letter is his incorrect address and that he never received the letter. He also claims that his correct address had been contained on prior correspondence to the plaintiffs. He further claims in his affidavit that the plaintiffs were aware that Allstate was represented by counsel at the time the letter was allegedly sent.³

---

²This Court will later discuss the circumstances surrounding whether the letter was sent and received by Mr. Read.

³The plaintiffs do not admit or deny these specific allegations for they claim that the affidavit was not attached to the defendant's Motion for Partial Summary Judgment. This is correct, however, it was attached to the defendant's Response in Opposition to the Motion to Amend, [Doc. 25], and the defendant attached it to its Reply to Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment, [Doc. 59]. Thus, it was part of the record prior to the plaintiffs' response and subsequent to. This Court can take judicial notice of filings contained in the Court record and will consider the affidavit.

On February 27, 2008, the plaintiffs filed a lawsuit against the defendant in the Circuit Court of Hawkins County alleging breach of contract, violation of the Tennessee Consumer Protection Act ("TCPA"), defamation, negligence and unjust enrichment.[4] The Complaint did not allege specifically that Allstate acted in bad faith. It did, however, state in the prayer for relief, "Wherefore, premises considers, plaintiff prays: . . . 3. Plaintiff be awarded reasonable attorney fees pursuant to the Tennessee Consumer Protection Act (T.C.A. § 47-18-101 *et seq*.) and the Tennessee Bad Faith Refusal to Pay (T.C.A. § 56-7-105)."

On December 10, 2008, the plaintiffs moved to amend their complaint to add a cause of action for Bad Faith Denial pursuant to Tennessee Code Annotated section 56-7-105. Allstate objected to the amendment, arguing that plaintiffs did not satisfy the statutory prerequisites to recovering the bad faith penalty before filing suit. The United States Magistrate Judge stated in an Order dated December 18, 2008, that the defendant's objection was actually a "premature motion for summary judgment" and that "it would be inappropriate for the Court to make a factual determination in ruling upon the propriety of plaintiffs' motion to amend, which is what the defendant implicitly asks this court to do." The magistrate judge granted the motion, and

---

[4]On October 9, 2008, this Court dismissed the claims brought on behalf of the plaintiffs' minor children and the defamation claim. It also struck a statement contained in the Complaint which stated, "No person has ever been charged by any law enforcement agency for the intentional burning of the house in question."

Allstate did not appeal the Order to this Court. Plaintiffs filed their Amended Complaint on December 29, 2008, and it specifically alleged a claim pursuant to section 56-7-105.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough.

*Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

### III. ANALYSIS

The defendant argues that the plaintiffs' Tennessee Bad Faith Refusal to Pay claim, *see* Tenn. Code Ann. § 56-7-105, should be dismissed for failure to comply with the statutory provisions. Specifically, the defendant first argues that a formal demand was never made because there is no proof that the demand letter was actually mailed, the demand letter in the record was incorrectly addressed, and the recipient listed on the demand letter never actually received the letter. Second, the defendant argues that the plaintiffs did not communicate the demand sixty days in advance of filing suit.

Section 56-7-105(a) states:

(a) The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest on the bond, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that the failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond; and provided, further, that the additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.

Tenn. Code Ann. § 56-7-105.

Because this statute is penal in nature, it must be "strictly construed." *Walker v. Tennessee Farmer's Mut. Ins. Co.*, 568 S.W.2d 103, 106 (Tenn. Ct. App. 1977) (citing *St. Paul Marine & Fire Ins. Co. v. Kirkpatrick*, 164 S.W. 1186, 1190 (1914)). In order to recover under this section, a claimant must prove that "(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) that the refusal to pay must not have been in good faith." *Hampton v. Allstate Ins. Co.*, 48 F.Supp.2d 739, 746 (M.D. Tenn. 1999) (citing *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d, 124, 126 (Tenn. Ct. App. 1986) (citations omitted)). Furthermore, the burden of proving an insurance company's bad faith in refusing to pay lies with the insured. *Stooksbury v. American Nat. Prop. and Cas. Co.*, 126 S.W.3d 505, 518-19 (Tenn. Ct. App. 2003).

Tennessee Courts have not defined the "exact nature of a 'formal demand' for the purposes of seeking the bad-faith penalty." *Topmost Chemical and Paper Corp. v. Nationwide Ins. Co.*, No. 01-2588V, 2002 WL 1477880 (W.D. Tenn. Apr. 23, 2002). The case law seems clear that "it is not necessary for the demand to be written; repeated verbal demands are enough." *Id.* (citing *Hampton*, 48 F.Supp.2d at 746). However, "it must be specific enough so that 'the insurance

company is aware or has notice from the insured of the insured's intent to assert a bad faith claim, if the disputed claim is not paid.'" *Id.* (quoting *Hampton*, 48 F.Supp.2d at 746-47). In addition, "it is the overt threat of § 56-7-105 litigation that is meant to trigger payment on the underlying policy by the insurer, and it is the failure to pay in the face of this threat that entitles the insured to the bad faith penalty." *Cracker Barrel Old Country Store v. Cincinnati Ins. Co.*, 590 F.Supp.2d 970, 975 (M.D. Tenn. 2008).

These principles are viewed in light of the purpose of the section 56-7-105 formal demand requirement which "is to allow the insurer to evaluate its reasons for denying the claim after being aware for 60 days that if the claim is not paid, the insurer faces the risk of exposure to a bad faith penalty claim." *Hampton*, 48 F.Supp.2d at 746 (citing *Kirkpatrick*, 164 S.W. at 1190). "Section 56-7-105 is thus intended 'to supersede the necessity of suit . . . the underlying thought being that the insurers on formal demand so made would, noting the warning, thereby be induced to pay the loss without suit. . . ." *Cracker Barrel*, 590 F.Supp.2d at 975 (quoting *Walker*, 568 S.W.2d at 106).

Again, the defendant argues that a formal demand was never made because there is no proof that the demand letter, which plaintiffs attached to their Amended Complaint and to their Response to the Motion for Partial Summary

Judgment, was actually communicated to Allstate. First, this Court must decide whether actual communication of the demand is necessary, then it must decide whether there is a genuine issue of material fact that it actually was communicated to Allstate. Based on the statute and the above-cited case law, this Court finds that the plaintiffs must communicate the demand to the defendant. There is no way an insurer can be placed on notice, which is the purpose of the demand requirement, if the claimant does not so communicate. Thus this Court must now decide whether there is a genuine issue of material fact as to the communication.

According to the summary judgment standard, the plaintiffs may not merely rely upon allegations in their pleadings but must come forth with proof to show there is a genuine issue of material fact. The actual demand letter states nothing on its face to show that it was communicated to the defendant. Furthermore, the plaintiffs have not attached a Return Receipt from the United States Postal Service, a facsimile confirmation of sending, or an affidavit from anyone stating that it was communicated, i.e. mailed, faxed, etc., to Allstate. Moreover, there are no allegations or proof in the record that the demand was communicated to Allstate verbally. Based on the summary judgment standard and the current proof in the record, this Court cannot find that there is a genuine issue of material fact that the plaintiffs actually communicated the formal demand to the defendant. The issue being decided,

however, this Court would likely consider such proof on a Motion to Reconsider.

Despite so ruling, this Court will address defendant's other arguments. Allstate also presented proof in the form of Read's affidavit that the demand letter was incorrectly addressed, and he never actually received the letter. There is proof in the record that Allstate's address for general correspondence is the exact address listed on the letter. Thus, if the letter was actually mailed to that address, then it was mailed to the defendant. Although it would have been much better practice for the plaintiffs to send the letter to the person with whom they had been dealing at that person's specific address or to counsel for the defendant, this Court refuses to hold that in order for the formal demand to have been actually communicated it must have been communicated to a particular person, i.e. Read. The important factor is not whether a particular agent of the defendant received the formal demand; the important factor is whether the defendant received a communication which would put it on notice that it would be subject to the bad faith penalty if it did not pay the claim. Thus, this Court will not find that just because Read did not receive it or Allstate's counsel did not receive it, then notice was not sufficient. If the letter was mailed to Allstate and there is proof that some agent of Allstate was actually put on notice, then the statutory requirements would be met, regardless of that person's identity. Nevertheless, as stated above, based on the current record, there is no genuine issue of material fact that the formal

demand was actually communicated.

This Court will also address the argument that the plaintiffs failed to wait the 60 days required by the statute before filing suit. Again, on February 22, 2008, plaintiffs "sent" the demand letter to Read, an agent of Allstate. On February 27, 2008, the plaintiffs filed a lawsuit against the defendant in the Circuit Court of Hawkins County alleging breach of contract, violation of the Tennessee Consumer Protection Act ("TCPA"), defamation, negligence and unjust enrichment. The Complaint's only reference to the bad faith penalty was in the prayer for relief. It stated, "Wherefore, premises considered, plaintiff prays: . . . 3. Plaintiff be awarded reasonable attorney fees pursuant to the Tennessee Consumer Protection Act (T.C.A. § 47-18-101 *et seq*.) and the Tennessee Bad Faith Refusal to Pay (T.C.A. § 56-7-105)." On December 10, 2008, the plaintiffs moved to amend their complaint to add a cause of action for Bad Faith Denial pursuant to Tennessee Code Annotated section 56-7-105, and the magistrate judge granted the motion over Allstate's objection. Plaintiffs filed their Amended Complaint on December 29, 2008, and it specifically alleged a claim pursuant to section 56-7-105.

Based on these facts, the question before the Court is whether the plaintiffs alleged the Tennessee Bad Faith Refusal to Pay claim pursuant to section 56-7-105 in the original Complaint, which was filed before the 60-day limit had expired,

causing the action to be barred for failure to follow the statutory prerequisites to filing suit. It is clear that the Amended Complaint specifically alleging this cause of action was filed more than sixty days after the February 22, 2008 demand letter.

The defendant argues that the filing of the original Complaint only five days after the demand letter was dated "did not place Allstate on timely notice of their bad faith claim before filing suit against Allstate. Plaintiffs did not wait for a response from Allstate regarding their stated intention under Tenn. Code Ann. § 56-7-105 before suing." Allstate further argues that the 60-day requirement "does not have any bearing upon the right of the insured to enforce the contract itself." *See Walker*, 568 S.W.2d at 106. It also states that plaintiffs exercised this right with the filing of the suit; however, they voluntarily terminated their right to seek the bad faith penalty because they did not wait the required 60 days.

The plaintiffs respond that in the original Complaint "[t]hey did not seek the additional penalty contained in the Tennessee Bad Faith Statute." After filing the suit, Allstate made no attempt to pay the claim, and thus, they argue, nothing prevented them from amending the Complaint to add this cause of action. They rely upon *Mitchell v. New Hampshire Insurance Company*, N0. 89-369-II, 1990 WL 50723, at *3-6 (Tenn. Ct. App. Apr. 25, 1990), for support.

In that case, several different suits were brought as a result of fire loss to

duplex apartments, and all suits were consolidated. *Id.* at *1. Mitchell held an insurance policy with New Hampshire Insurance Company ("the insurance company"). *Id.* The insurance company refused to pay for the loss of the duplex because it asserted the fire was a result of deliberate acts of Mitchell. *Id.* Mitchell sued and was awarded $65,000.00 for the fire loss and $10,020.00 in bad faith penalty. *Id.* More specifically, the original suit was an interpleader action filed against Mitchell on February 25, 1978. *Id.* at *4. On July 31, 1987, Mitchell filed an answer, cross complaint, and counter-complaint. *Id.* It stated that the insurance company "has wrongfully and in bad faith failed to pay [his fire loss claim]." *Id.* The claim Mitchell asserted against the insurance company was for "the maximum amount available to [him] under the coverage provided to him, plus [his] reasonable attorneys fees and the costs of this cause." *Id.* On August 5, 1987, Mitchell's counsel wrote the insurance company's counsel, and the letter stated that "unless immediate action is taken to resolve [certain] issues, [Mitchell] intends to amend his suit to include the standard statutory allegation of bad faith." *Id.* at *5. On May 10, 1988, Mitchell amended his claim and included the bad faith claim pursuant to section 56-7-105. *Id.*

The insurance company argued that the trial court erred in holding that he complied with the statutory requirements regarding the formal demand. *Id.* at *3. The appellate court held:

>Under the circumstances of the present case, the rights of the parties are not without doubt. Appellee did seek judgment for his fire loss before formal demand, but formal demand was not required before suit for the fire loss only. Appellee did allege bad faith in his original action, but he sought judgment only for the amount due under the contract. He did seek attorneys fees, but not as a part of a statutory penalty.
>
>On August 5, 1987, after suing for the fire loss, appellee made formal demand and threatened suit for penalty. On May 10, 1988, over 9 months after formal demand and threat of suit for penalty, apparently without objection from appellant, appellee was permitted to amend his suit to seek penalty.
>
>If objection had been made and leave had been denied it appears that appellee would have had the right to nonsuit his entire action and to bring a new suit for fire loss and penalty. If such had occurred it would hardly be held that the withdrawn suit would have barred his action for penalty. The issue is not crystal clear, but the appellant had nine months to consider the peril of penalty for continued failure to settle without penalty. The purposes of the statutory provision for 60 days formal demand were met.
>
>No merit is found in appellant's fourth issue.

*Id.* at *6.

In Allstate's Reply, it did not distinguish *Mitchell* or cite any other case law in regard to this issue. Furthermore, it did not argue that *Mitchell* would not apply in this case, or that it is not good law. It merely argued that the plaintiffs actually sought the bad faith penalty in the original Complaint, and it relies on the statement

in the prayer for relief to support its contention.

Here, the situation is somewhat different than in *Mitchell*. In *Mitchell*, the demand came after the filing of the claim for failing to pay the claim in bad faith. In the instant case, it came before. In addition, the formal demand specifically stated that Mitchell would amend his claim to add a statutory bad faith claim if certain action was not taken. Because of the timing of the demand in the case at hand, the demand did not include a warning that the plaintiffs would amend their complaint to add a statutory bad faith claim. Also, Mitchell's original claim mentioned bad faith but it "sought judgment only for the amount due under the contract." *Id*. at 6. He sought attorney's fees, "but not as a part of a statutory penalty." *Id*. Here, the plaintiffs never mentioned bad faith except when they sought "attorney fees" pursuant to the bad faith penalty statute.

In addition, the decision in *Mitchell* did not hinge on the distinction that Mitchell's original claim did not seek judgment under the statute and his second suit did. That fact was not dispositive because the formal demand was communicated to the insurer **after** the original claim was filed, the demand warned that Mitchell would **amend** the claim if certain things were not done, he amended **well over** sixty days later, and the insurer did not object to the amendment. Thus, there is no question that specific notice was clearly provided that the claim would be amended.

No notice that an amendment would be forthcoming was present in the instant case, for formal demand possibly occurred prior to the filing of the original complaint. Therefore, *Mitchell* is not "factually indistinguishable" as the plaintiffs claim.

All that being said, this Court will still decide whether the seeking of "attorney fees" pursuant to section 56-7-105 constitutes seeking a judgment, i.e. alleging a cause of action under this statute. Again, to recover under the statute the plaintiff must show that "(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) that the refusal to pay must not have been in good faith." *Hampton*, 48 F.Supp.2d at 746. None of these things were alleged in the original Complaint. Of course, that is not necessarily dispositive as complaints are dismissed frequently for not alleging all of the elements of a claim and facts to support such elements, thus failing to state a claim. *See* Fed. R. Civ. P. 12(b)(6). The Amended Complaint addresses more of the elements and facts to support them. In addition, all specific causes of actions in the original Complaint are set out in a specific category, numbered by count, underlined, and in bold type. There is no specific count for the statutory bad faith penalty.

Considering all of the facts, this Court concludes that the plaintiffs did not set forth a cause of action pursuant to section 56-7-105 in the original complaint. Furthermore, as the defendant acknowledged, the 60-day requirement "does not have any bearing upon the right of the insured to enforce the contract itself." *See Walker*, 568 S.W.2d at 106. Thus, there is no legal requirement that would prevent the plaintiff from suing on the contract and then later amending the complaint to add the statutory cause of action as long as the prerequisites in the statute are met. Here, the plaintiffs waited the sixty days before amending the Complaint to add the cause of action.

## IV. CONCLUSION

This Court finds that there is a genuine issue of material fact as to whether the formal demand was communicated to the defendant. This Court also finds that if that demand was actually communicated, then it was done so sixty days after the formal demand was "sent." However, because a plaintiff must meet all statutory requirements to maintain the action, and there is no genuine issue of material fact as to one in this situation, then the defendant's motion for summary judgment is **GRANTED**, and the cause of action for the Bad Faith Penalty pursuant to 56-7-105 is hereby **DISMISSED**.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE